UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ELIZABETH DUNCAN, )
)
   Plaintiff, )
)
vs. ) Case No. 13-CV-189-FHM
)
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
)
   Defendant. )

## OPINION AND ORDER

Plaintiff, Elizabeth Duncan, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th

---

[1] Plaintiff, Elizabeth Duncan's application for Disability Insurance benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) John W. Belcher, was held October 25, 2011. By decision dated November 25, 2011, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on January 28, 2013. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 44 years old on the alleged date of onset of disability and 46 years old on the date of the denial decision. She graduated from high school and has an Associates Degree in child development/social work and formerly worked as a master teacher at a daycare facility. Plaintiff claims to have been unable to work since October 18, 2009 due to diabetic neuropathy and post carpal tunnel surgeries. [R. 207]. Plaintiff also alleges problems with her cervical spine, both arms, and both hands.

## The ALJ's Decision

The ALJ determined that the Plaintiff's severe impairments include diabetes mellitus with diabetic neuropathy, mild carpal tunnel syndrome bilaterally, degenerative disc disease and osteoarthritis of the cervical spine, hypertension, hyperlipidemia, and major depressive disorder. [R. 15]. The ALJ further determined that Plaintiff has the residual functional

capacity (RFC) to perform sedentary exertional work.[2]  The ALJ further found Plaintiff's functional limitations included occasional climbing of stairs, balance, bend or stoop, kneel, crouch and crawl.  Plaintiff cannot climb ladders, ropes, and scaffolding, but can occasionally reach above the shoulders bilaterally, perform fine fingering, handling, and feeling with the right hand.  She can frequently perform fingering, handling, and feeling.  Plaintiff cannot have prolonged overhead gazing.  She can do simple and some complex detailed work, have superficial contact with co-workers, supervisors, and the public. [R. 16].

The ALJ determined that Plaintiff did not have past relevant work.  Based on the testimony of a vocational expert the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 31-32].  Therefore, the ALJ found that the Plaintiff was not disabled.  The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled.  *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) deprived Plaintiff of her Constitutionally protected right to due process by failing to make a full and fair inquiry;  2) failed to properly evaluate, consider, and weigh the medical evidence; 3) failed to find Plaintiff met or equaled a Listing; 4) failed to perform proper Step Four and Step Five determinations; and 5) failed to perform a proper credibility determination.

---

[2] Pursuant to CFR § 404.1567 sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

## Analysis

### Deprivation of Due Process Rights

Prior to the administrative hearing, the ALJ ordered physical and psychological consultative examinations which were performed January 4, 2010 and February 9, 2010 respectively. The ALJ determined additional testing was necessary. [R. 86]. On May 3, 2011 a nerve conduction study (EMG/NCS) was performed by Dr. Sri Reddy, M.D., which revealed right mild median nerve entrapment at the wrist (carpal tunnel syndrom); no diffuse peripheral neuropathy. An EMG of C5, C6, C7, C8-T1 muscles did not reveal radiculopathy. The study indicated bilateral lower extremity sensory peripheral neuropathy. An EMG of L4, L5, and S1 muscles did not reveal radiculopathy. [R. 594-598]. A subsequent EMG study performed on July 22, 2011 supported a diagnosis of bilateral carpal tunnel syndrome.[3] There were no findings to suggest a more generalized neuropathic process or cervical radiculopathy. [R. 622]. A cervical MRI performed on September 7, 2011 revealed multilevel degenerative changes with a syrinx[4] at C4-C5 and C5-C6.

On October 25, 2011 Plaintiff requested a consultative examination and medical source statement to evaluate the EMG findings of right upper extremity median nerve entrapment and bilateral lower extremity sensory peripheral neuropathy. [R. 260]. The ALJ did not grant Plaintiff's request. Plaintiff argues that the failure to order the requested

---

[3] Plaintiff's right arm appeared to be affected slightly greater than the left. The study was unable to determine whether the findings were residual deficits from Plaintiff's previous carpal tunnel surgery or whether there was a deterioration.

[4] According to Merck, http://www.merck.com/mmpe/sec16/ch224/ch224j.html?qt-syrinx&alt=sh, a syrinx is a rare fluid-filled neurological cavity. A syrinx results when cerebrospinal fluid collects in a small area of the spinal cord and forms a pseudocyst.

consultative examination deprived her of due process and without interpretation of the EMG study the ALJ does not have substantial evidence to support his decisional RFC.

The court finds Plaintiff has failed to assert a colorable Constitutional claim. Plaintiff's underlying argument that the ALJ failed to fully and fairly develop the record will be addressed by the court.

In every case, an ALJ has the responsibility to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This responsibility may require the ALJ to order a consultative examination. See *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir.1997). The Commissioner is given broad latitude, however, in making a decision to order such an examination. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990). "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997).

In this case, there are sufficient medical records to enable the ALJ to make a decision. The court finds that the ALJ did not err in failing to order a consultative examination. The record demonstrated that Plaintiff had degenerative changes in her cervical spine and evidence of bilateral carpal tunnel syndrome. The ALJ's RFC took into account these physical limitations by including the following RFC limitations: "[c]an occasionally reach above the shoulders bilaterally; occasionally perform fine fingering, handling and feeling with the right hand, and frequently perform fingering, handling and feeling, and no prolonged overhead gazing." [R. 16].

Consideration of Medical Source Information

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Kenneth Trinidad, D.O., [Dkt. 19, p. 3-7], as it was only accorded some weight. [R. 24]. Dr. Trinidad concluded that Plaintiff was temporarily totally disabled and unable to perform any work-related activity because of a change of condition for the worse in her cervical spine. [R. 606-609]. Dr. Trinidad, however, only examined Plaintiff on two occasions in connection with her workers' compensation claim – not her disability claims. The ALJ explained:

> The claimant's worker's compensation physician, Dr. Trinidad, reports the claimant needs vocational rehabilitation to a job not requiring repetitive use of the hand (Exhibits 14F and 20F). [S]uch statements, made in the context of a state workers' compensation claim, are not dispositive of a claim made under Social Security. In a workers' compensation evaluation, the issue is a claimant's capacity to perform work existing with a particular employer. By contrast, under Social Security, the issue is the claimant's residual functional capacity to perform work that exits in the much broader, national economy. While a workers' compensation finding of temporary total disability may have some value in assessing the residual functional capacity of a Social Security claimant, it cannot be given controlling weight. Accordingly, the undersigned gives only some weight to the claimant being on temporary disability pursuant to state law.

[R. 23-24]. The court finds that the ALJ's decision adequately explained the weight accorded to Dr. Trinidad's opinion.

Plaintiff argues that because the ALJ's decision was silent as to the weight given to her treating orthopedic surgeon, Dr. Carl J. DePaula, M.D., the ALJ failed to properly evaluate his opinion. [Dkt. 19, p. 5]. Dr. DePaula treated Plaintiff for carpal tunnel syndrome which affected both wrists. Surgery was performed on October 21, 2009 and November 13, 2009. On May 4, 2010, Dr. DePaula was of the opinion that Plaintiff was

disabled, that she should participate in vocational rehabilitation, and she should receive a handicapped parking placard. [R. 527, 590]. The ALJ's decision thoroughly discussed Dr. DePaula's treatment. [R. 18]. Further, though he did not specifically address the actual weight accorded to Dr. DePaula's opinion, the ALJ was not silent. The ALJ noted:

> Social Security Ruling 96-5p states, in pertinent part, that some issues are not medical issues, but are administrative findings. Examples of such issues are what an individual's residual functional capacity is or whether they are disabled. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance (see also 20 CFR 404.1527(e)[.].

[R. 24]. The ALJ's RFC accounted for the physical work-related limitations Dr. DePaula found to exist. Plaintiff was limited to sedentary work, only occasional reaching above her shoulders, no prolonged overhead gazing, and only occasional fine fingering with her right hand. [R. 16]. The determination whether or not Plaintiff is disabled is an issue solely reserved to the Commissioner. Other such opinions include whether an impairment meets or equals a listing, Plaintiff's RFC, whether a Plaintiff can do past relevant work, how age, education, and work experience apply. Social Security Ruling (*SSR*) 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. See also 20 C.F.R. § 404.1527(e)). The court finds no error in the ALJ's evaluation of Dr. DePaula's opinion.

<u>Listing 1.04A</u>

Plaintiff argues that the ALJ erred in failing to find she meets Listing 1.04A. The Listings of Impairments (Listings) describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App.1. At step three of the sequential analysis, the ALJ

is required to discuss the evidence in the context of the relevant listing and the reasons for determining that Plaintiff does not meet a listing. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  It is Plaintiff's burden to show that her impairment is equivalent to a listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Further, all of the specified medical criteria must be matched to meet a listing. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988).

Listing 1.04 states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

In this case, there is medical evidence that Plaintiff has degenerative disc disease, [R. 695-696], however, there is no evidence of "nerve root compression." Moreover, while Dr. Trinidad found Plaintiff's neck symptoms progressively worse with increased radicular symptoms, [R. 606-609],  two EMG studies revealed no bilateral peripheral neuropathy of her upper limbs and no cervical radiculopathy. [R. 594-598, 622]. Further,  consultative examiner Dr. Al-Shathir, M.D., and treating physician Dr. Martin L. Martucci, M.D., found Plaintiff's strength of lower limbs, elbows, shoulders, and wrists normal, muscle tone normal and intact, no muscle atrophy or deformity, ability to walk without assistive devices, gait

within normal limits, ability to reach, bend and sit up, no new signs of gross motor or sensory deficits. [R. 384-395; 600-601].

Plaintiff cannot meet Listing 1.04A because the medical evidence demonstrates she does not meet all the criteria. The ALJ provided a specific rationale for finding Plaintiff's impairments did not meet Listing 1.04A and substantial evidence supports the ALJ's determination.

<u>Steps Four and Five Determination</u>

Plaintiff argues that the ALJ failed to include all limitations that were established by the record in the hypothetical question posed to the vocational expert – specifically Plaintiff argues that the ALJ failed to include  no overhead gazing, and only moderate or superficial contact with coworkers, supervisors, and the public. [Dkt. 19, p. 8-9].  In posing the hypothetical question to the vocational expert, the ALJ layered limitations supported by the record upon previous hypothetical questions.  The ALJ stated:

> All right.  I want you to assume a forty six year old individual who has a high school education and also double Associates Degrees, as described earlier in the summary of the testimony.  This hypothetical person would be able to lift twenty pounds occasionally, ten pounds frequently, with pushing and pulling consisting with the lifting and carrying limitations, would stand and walk for six hours out of an eight hour day, provided that they were limited to simple tasks and moderately complex work requiring only superficial contact with co-workers and supervisors and the public.

\* \* \*

> Now, I want you to take those same physical restrictions and add to them the following restrictions to the hands or arms. Occasional overhead reaching with the right arm. No, make that bilateral. I'm sorry. Occasional bilateral overhead reaching. Occasional use of the right hand for handling, feeling and manipulation and frequent left hand limitation for handling, feeling, and manipulation. And no prolonged overhead gazing.
>
> \* \* \*
>
> In the third hypothetical, I'm going to use the same restrictions for the upper extremities, but the exertional limitations are going to change somewhat to ten pounds occasionally, lifting and carrying ten pounds occasionally, less than ten pounds frequently, two out of eight for standing and walking. Six out of eight for sitting. The individual would be able to do occasional climbing of stairs and ramps, occasionally balance, bend, stoop, kneel, crouch, crawl. No ladders, ropes or scaffolding. And as I said, the remaining upper extremity restrictions would remain the same.

[R. 60-63]. The ALJ's hypothetical thus included no prolonged overhead gazing and only superficial contact with co-workers, supervisors, and the public. The court finds no error in the ALJ's hypothetical questioning of the vocational expert.

Plaintiff contends that the jobs identified by the vocational expert are not available to her because her RFC limits her to moderate or superficial contact with the coworkers, supervisors, and the general public. She argues that the jobs identified by the vocational expert are defined in the DOT as requiring significant work with people.

The jobs the vocational expert identified are: call-out operator (DOT code 237.367-014); surveillance system monitor (DOT code 379.367-010); and election clerk (DOT code 205.367-030 DOT). The DOT lists each of these jobs as having a people rating of 6. The

"people rating" expresses the degree of interaction with other people that the job requires. As explained at Appendix B to the DOT, "there are nine possible function assignments for the "People" category, and the numbering denotes, from highest (0) to lowest (8), the job's involvement with people. Dictionary of Occupational Titles, App. B—Explanation of Data, People, & Things, 1991 WL 688701. A "people rating" of 6 thus indicates a job has little involvement with people.

Further, the job descriptions for the three positions also indicate that contact with people is rather limited. The DOT description for call-out operator states:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

The description for surveillance-system monitor states:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action:  Observes television screens that transmit in sequence views of transportation facility sites.  Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity.  Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

The description for election clerk states:

> Compiles and verifies voter lists from official registration records.  Requests identification of voters at polling place.  Obtains signature and records names of voters to prevent voting of unauthorized persons.  Distributes ballots to voters and answers questions concerning voting procedure.  Counts valid ballots and prepares official reports of election results.

The court finds there is no conflict between the DOT descriptions of the designated jobs and RFC restriction of superficial interaction with co-workers, supervisors, and the general public.

## Credibility Determination

Plaintiff argues that the ALJ failed to perform a proper credibility determination. In support of this argument, Plaintiff asserts the ALJ mischaracterized her daily activities and made non-specific references to evidence to support the credibility determination. Credibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Id.*

In determining that Plaintiff's testimony was not credible, the ALJ found that the Plaintiff's "statements about her impairments and their impact on her ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms, and objective documentation in the file." [R. 22]. The ALJ accurately outlined the prominent points of Plaintiff's testimony and cited numerous grounds tied to the evidence for the credibility finding.  The ALJ noted Plaintiff's medical care had been routine and conservative in nature and included medication management for the degenerative disc disease of her cervical spine.  The ALJ noted Plaintiff's description of her symptoms and limitations throughout the record have been inconsistent and unpersuasive. The ALJ found that the record does not demonstrate clinical signs and medical findings and

abnormalities to establish pain of such severity as to preclude all types of work. The court finds that the ALJ properly linked his credibility finding to the record. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 16th day of May, 2014.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE